**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

JANET MAVIS MARCUSSE,

     Plaintiff,

v.

> Case: 1:25–cv–01728
> Assigned To : Unassigned
> Assign. Date : 5/27/2025
> Description: Pro Se Gen. Civ. (F–DECK)

PAMELA J. BONDI, Attorney General of
the United States, in her official capacity;
DEPARTMENT OF JUSTICE;
DONALD J. TRUMP, President of the United
States, in his official capacity;
UNITED STATES;
KASHYAP PATEL, Director of the Federal
Bureau of Investigation, in his official capacity;
FEDERAL BUREAU OF INVESTIGATION;
SCOTT BESSENT, Secretary of Treasury,
in his official capacity;
UNITED STATES TREASURY;
JEROME POWELL, Chair of the Board of
Governors of the Federal Reserve,
in his official capacity;
THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE;
MICHAEL FAULKENDER, Acting Commissioner of Internal
Revenue Service, in his official capacity;
INTERNAL REVENUE SERVICE;
JAMIESON GREER, Acting Director of U.S. Office of
Government Ethics, in his official capacity;
U.S. OFFICE OF GOVERNMENT ETHICS.

     Defendants.

## COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
## PETITION FOR WRIT OF MANDAMUS

### JURISDICTION

Basis of Jurisdiction is U.S. Government Defendants, pursuant to 28 USC 1331, 1340, 1361,

1651, 2201(a), 2202; 5 USC 552(a)(4)(B), 555(b), 702-706(1)(2)(A)-(F); 18 USC 4, 201, 216, 218,

1964(a)(c); 2520(b)(1); 22 USC 616(a), 618(f); 26 USC 7434; FRCP 60(d); U.S. Constitution.

## VENUE

Venue is proper under 28 USC 1391(e)(1)(A).

## LIST OF PARTIES

PLAINTIFF:                          JANET MARCUSSE
                                    P.O. Box 246
                                    Kanawha, IA 50447

DEFENDANTS:

PAMELA J. BONDI,                    UNITED STATES DEPARTMENT OF JUSTICE (DOJ)
U.S. Attorney General,              Assistant Attorney General for Administration
U.S. Department of Justice          Justice Management Division
950 Pennsylvania Ave., NW           950 Pennsylvania Ave., NW
Washington, DC 20530-0001           Washington, DC 20530-0001

DONALD J. TRUMP, President          UNITED STATES
of the United States                U.S. Attorney Jeanine Pirro
1600 Pennsylvania Ave., NW          Civil Process Clerk
Washington, DC 20006                601 D Street, NW
                                    Washington, DC 20530

KASHYAP PATEL, Director,
Federal Bureau of Investigation     FEDERAL BUREAU OF INVESTIGATION (FBI)
935 Pennsylvania Ave., NW           935 Pennsylvania Ave., NW
Washington, DC 20535-0001           Washington, DC 20535-0001

SCOTT BESSENT, Secretary,           UNITED STATES TREASURY
U.S. Treasury                       1500 Pennsylvania Ave., NW
1500 Pennsylvania Ave., NW          Washington, DC 20220
Washington, DC 20220

JEROME POWELL, Chair,               BOARD OF GOVERNORS OF THE FEDERAL RESERVE
Board of Governors                  20th St. & Constitution Ave., NW
of the Federal Reserve              Washington, DC 20551
20th St. & Constitution Ave., NW
Washington, DC 20551

MICHAEL FAULKENDER, Acting          INTERNAL REVENUE SERVICE (IRS)
Commissioner Internal Revenue       1111 Constitution Ave., NW
1111 Constitution Ave., NW          Washington, DC 20224
Washington, DC 20224

JAMIESON GREER, Acting Director     U.S. OFFICE OF GOVERNMENT ETHICS

2

U.S. Office of Government Ethics        250 E Street, SW, Suite 750
250 E Street, SW, Suite 750             Washington, DC 20024
Washington, DC 20024

## SUMMARY OF CLAIMS

### COUNT I

Defendants committed Foreign Agent Registration Act (FARA) and advertising violations to facilitate theft of funds by third parties, admitted to receiving payments, protecting third parties from civil and criminal liability, making false representations to deny existence of actual and imputed conflicts of interest, accusing Plaintiff of fictitious crimes, including stealing funds based on fabricated evidence and perjury, framing Plaintiff for unforeseeable losses caused by good-faith reliance on unauthorized Defendant FBI written endorsements of third parties who defrauded her, which caused all such unlawful and unconstitutional activity to be VOID ab initio.

### COUNT II

Defendants were barred from pursuing Plaintiff's prosecution by Jurisdictional and Sovereignty defects, triggering **Clearfield Trust** doctrine, which caused their unlawful and unconstitutional actions to be VOID ab initio for lack of authority, discretion, and standing.

### COUNT III

Defendants were barred from pursuing Plaintiff's prosecution by direct and imputed conflicts of interest implicating Defendant Federal Reserve whose "expert" witness relied on evidence falsification to render "opinion" advocating for Plaintiff's guilt; except under oath he admitted they collapsed foreign bank where funds had been held, an admittance removed by demonstrable transcript tampering, which caused Plaintiff's convictions to be VOID ab initio.

3

## COUNT IV

Defendants were barred from pursuing Plaintiff's prosecution by direct and imputed conflicts of interest in which a final conviction for bribery by attorney employed at Defendant Department of Treasury occurred, which caused Plaintiff's convictions to be VOID ab initio.

## COUNT V

Defendants were barred from pursuing Plaintiff's prosecution by direct and imputed conflicts of interest, political favoritism attributed to Defendant Attorney General, who failed to recuse himself due to evidence of third-party culpability over quid pro quo favors and violent attacks of Plaintiff, which caused her convictions to be VOID ab initio.

## COUNT VI

Defendants with conflicts of interest, actual and imputed, employed unreasonable, fraudulent, and selective **Chevron** deference to limit "investments" definition to only a product created from evidence tampering to use the court to bar Plaintiff's defense presenting bank records to prove investments made with third parties as "irrelevant" before prosecutors presented their first witness, use transfers to investments to fabricate "income" claims against Plaintiff to create motive and element of "gain" for the jury but secretly remove the same types of transfers from "income" of only one co-defendant afterwards, exposing willful fraud and unlawful ex parte collusion with a biased judge, which caused Plaintiff's convictions to be VOID ab initio.

## COUNT VII

Defendants with conflicts of interest, actual and imputed, circumvented provisions of an immunity contract affording "victim" status by evidence falsification and perjury that otherwise would have barred Plaintiff's prosecution, which caused her arrest, prosecution, and convictions to be VOID ab initio.

## COUNT VIII

Defendants with conflicts of interest, actual and imputed, obstructed Plaintiff from fundamental rights, including pretrial release and public trial, having advised victims no trial was scheduled to obstruct them from discovering their intended fraud, enlisting biased judge to violate **Brady** guarantees, obstruct bank records, and fix trial outcome, which caused the trial process to be VOID for denial of all due process.

## COUNT IX

Defendants had no discretion to commit felonies to prosecute Plaintiff on fictitious charges to redirect liability for victim losses away from culpable third parties, to incite physical assaults against her, drug her food and water before court appearances, engage in jury and witness tampering with IRS intimidation, fabricate evidence and tax returns, commit and suborn perjury, obstruct and destroy evidence, falsify cause in a secret court for a search warrant to seize exculpatory evidence and conceal its existence, falsify the docket, falsify the transcripts, and illegally wiretap her conversations with counsel, which caused Plaintiff's prosecution to be VOID ab initio.

## COUNT X

Defendants with conflicts of interest, actual and imputed, had no discretion to interfere and have Plaintiff's access to the courts barred for constitutional and statutory remedies, including direct appeal, the 2255 motion, and new innocence claims, further holding Tax Court orders in contempt by "purging" documents and destroying records by illegal entry.

## COUNT XI

Defendants failed to adhere to published process for investigating or determining conflicts of interest and violations of law committed in the absence of jurisdiction and authority.

## INTRODUCTION

1.    The nature of this suit providing the Court with jurisdiction, the duty for Defendants to act, and conferring Plaintiff with standing and a private right of action, include the facts and evidence establishing Plaintiff's harm arising from Defendants who accepted bribes, engaged in undisclosed conflicts of interest, actual and imputed, and collusion in pursuing fictitious charges to frame her for the crimes of the uncharged third parties who caused the losses and kept the money.

2.    Plaintiff was barred from constitutional and statutory remedies by Defendants interfering with the process through fraud, demands for unlawful deference, ex parte collaborations, denial of access to make filings, retaliation and violence, which resulted in no consideration or disposition made of her claims of bribery, conflicts of interest, criminal activities, jurisdictional and sovereignty defects, causing the courts to have failed to discharge their duties, rendering the process VOID.

3.    Plaintiff was denied the use of admitted bank records at trial to prove innocence and third-party culpability by Defendant fraud, rendering her convictions VOID for denial of all due process.

4.    The Sixth Circuit Court of Appeals affirmed convictions by initially claiming to have considered Plaintiff's claims, but when confronted with court fraud and misconduct claims in Petition to Recall Mandate, admitted it "declined" to consider them, limiting her "remedy" to filing 2255 motion, inequitably depriving her of statutory right to direct appeal, rendering the process VOID.

5.    Although the trial court admitted to the Court of Appeals it had received Plaintiff's 2255 brief and exhibits 10 months earlier, promising to file them, thereby causing the denial of her Petition for Writ of Mandamus, the documents have never been filed on the public record nor a disposition made of the claims as she raised them, thereby inequitably denying her the constitutional guarantee of habeas corpus, rendering the process VOID for denial of all due process.

6.    Where there were Defendant admissions of obtaining payments, bribery convictions, and

fraudulent concealments, all previous actions taken by Defendants against Plaintiff were NULL and VOID ab initio, including pursuant to 18 USC 201, et al. (Notes, 10/23/62 Memorandum of Attorney General, Conflict of Interest provisions to void any "transaction or matter", stating Section 218 did not override decision in **U.S. v. Mississippi Valley Generating Co.**, 364 U 520, 549-551 (1961)(It is clear Congress intended to establish rigid rule of conduct to which there are no exceptions; public policy forbids enforcement of contract whenever a government agent fails to act in accordance with objective standard of conduct, having been deemed guilty of violating the statute, regardless of whether there was actual corruption or any actual loss suffered by Government); 18 USC 216 (Penalties, Injunctions & Remedies for Bribery, including under the common law, providing standing to Plaintiff as "any other person"); 18 USC 218 (Voiding Transactions for Bribery, Graft, Conflicts of Interest, including any "contract...right...use, authority, privilege, benefit...ruling, decision, opinion....or the performance of any service" tainted by bribery or conflicts of interest).

7.      Where a full and honest accounting of the reliable evidence shows Plaintiff's arrest, trial, convictions, and sentencing judgment are VOID ab initio, meaning they never had any legal effect, she also has the standing and right to request a review, pursuant to 5 USC 702, 704 and 706(1), (2)(A)-(F), of the conflicts of interest, falsifications of facts and evidence, and criminal activities in which Defendant attorneys and agents have arrogantly operated in relying upon the failure of the Executive and Judicial Branches to do their duty pursuant to 18 USC 4 and 28 USC 535(b), suggesting why it has been impossible for Plaintiff to have access to the courts or her claims of crimes investigated, much less have access to the remedies the law would otherwise have mandated.

8.      The facts and reliable evidence will establish Plaintiff is entitled to tolling of any applicable statute of limitations and exceptions to statutory bars from being heard where she was falsely imprisoned in the absence of jurisdiction and discretion over conflicts of interest (direct and imputed)

and fictitious charges, and all due process denied.  Jurisdictional and sovereignty defects, unlawful

**Chevron** deference, immunity contract violations, and more, have been preserved from the time of

Plaintiff's arrest continuing through a petition served on the trial court on 3/22/23 at 11:54 a.m.,

which was never filed nor a determination made, indicative of a continuing 20-year arbitrary and

retaliatory bar of the right of access to that court.

9.      On 1/20/25, President Donald Trump signed an Executive Order entitled, "Ending the

Weaponization of the Federal Government", officially recognizing in Sec. 2. Policy. "It is the policy

of the United States to identify and take appropriate action to correct past misconduct by the

Federal Government related to the weaponization of law enforcement and the weaponization of

the Intelligence Community."  Plaintiff submits her case will establish the weaponization of federal

law enforcement was by no means unique to the Biden Administration, meriting review.

10.     The accompanying Declaration of Janet Mavis Marcusse, including exhibits and cites to the

published record (hereinafter "Decl."), is incorporated herein, paragraphs 1-799.  The facts and

evidence contained in her Declaration establish that this Court cannot attach its usual pre-

sumption of regularity to Defendants where there is so much clear and overwhelming evidence

Defendants have engaged in unlawful conduct, irregularity and bad faith in Plaintiff's case.

11.     Plaintiff has no other recourse for redress of irreparable harm.

<u>**STATEMENT OF FACTS**</u>

<u>**COUNT I**</u>

**EVIDENCE ESTABLISHING DEFENDANT FBI BRIBERY, ACTUAL AND IMPUTED, FARA VIOLATIONS &
COLLUSION WITH DEFENDANTS DEPARTMENT OF JUSTICE, IRS AND FEDERAL RESERVE AS
ACCESSORIES AFTER THE FACT TO CREATE FICTITIOUS CHARGES**

12.     FARA imposes public disclosure obligations on persons representing foreign interests,

including periodic public disclosure of their agency relationship and the activities, receipts, and

disbursements in support thereof (Pub. L. No. 75-583 (22 USC 611 et seq.).)

13.    The Act protects the public's right to know what foreign governments and corporations are up to, protecting our national defense, economic security, and Constitutional system.  Foreign agent registration provides a window into the foreign business relationships and entanglements of federal officials, and is a vital key to exposing influence peddling and bribery schemes.

14.    Plaintiff Janet Marcusse was an individual acting as an agent under contract with investors, which afforded her discretion to choose investments, placing funds in a hedge fund operating through Suisse Security Bank & Trust (SSBT), Nassau, Bahamas (Decl. No. 2-3, 10, 13-15, 272-274).

15.    The evidence shows Defendant FBI's employee, Supervisory Special Agent Gerard Forrester, on official FBI letterhead, signed and distributed two endorsement letters of SSBT and Mohammed Harajchi, Chairman of the Board, which were employed by SSBT staff with its commercial accounts as a promotional tool upon which Marcusse made good-faith reliance (Decl. No. 11-16, 19).

16.    The evidence shows the Central Bank of the Bahamas revoked SSBT's license just two months after the second Agent Forrester FBI endorsement letter over the money laundering committed by SSBT directors in having stolen millions of funds and transferring them to Switzer-land out of the reach of the Bahamian courts (Decl. No. 16, 25, 37).

17.    Immediately following SSBT's collapse, Defendants FBI Special Agent Samuel Moore, IRS Special Agent James Flink, and DOJ AUSA Thomas Gezon (WDMI), convene a grand jury investiga-tion targeting Marcusse, accusing her of "losing" all of the money, leaking the investigation to the media, and using the bad publicity to solicit complaints against her (Decl. No. 10, 16-17, 107).

18.    In a sworn Affidavit, Agent Moore attests a grand jury was initiated due to investor com-plaints about missing distributions, except in Freedom of Information Act (FOIA) litigation after trial, Defendant FBI could produce _no_ Form 302's to support Moore's statement, establishing fraud

as well as exposing a preemptive move to destroy Marcusse's credibility and obstruct her intended litigation against the FBI, which was a conflict of interest (Decl. No. 17-18, 86, 139-140).

19.    The evidence shows Agent Forrester continued to represent SSBT after his retirement from the FBI, even appearing in the Bahamian courts with SSBT's Chairman Mohammed Harajchi, while SSBT customers were barred from access to the funds stolen from them (Decl. No. 16, 21).

20.    The evidence shows after the first grand jury failed to return an indictment, which almost never happens, Agents Moore and Flink created knowingly fictitious charges for AUSA Gezon to convene a second grand jury, secure an indictment, and obtain guilty verdicts by now attesting Marcusse had "stolen" all of the money in a "Ponzi scheme" to "spend" on herself and others (Decl. No. 3-6, 39-59, 107-111, 142-145, 182-287, 290-310, 356-360, 366-418, 606-621).

21.    In response to Marcusse's motion to call Agent Forrester and use his endorsement letters for a good-faith reliance defense mandating acquittals, AUSA's Donald Davis and Gezon falsely attest Forrester did not exist, the letters were "bogus" and could not be authenticated, they were typical *prime bank fraud* lulling documents, and used to "fraudulently promote the investment scheme" (Decl. 10-24, Exh. 5, 7).

22.    By accusing Marcusse of fabricating the letters, Defendants were empowered to conceal the role Agent Forrester had in collaborating with SSBT and its Bahamian principals to steal millions of dollars from U.S. citizens, its target market, and frame her, having also had the court deny bond to obstruct and spy on her defense (Decl. No. 12, 19-38, 111-126, 421, 644-647, Exh. 5, 7).

23.    AUSA Michael Schipper obstructs Marcusse from submitting bank records into evidence in support of her summary exhibit listing the wire transfers made for the hedge fund by attesting the documents did not come from his bulk bank record exhibits, making it appear in front of the jury as if she were lying and had fabricated evidence (Decl. No. 3-7, 127-133, 246, 256, 296-305).

24.     The admitted bulk bank record exhibits were stacked in banker boxes in front of the jury like stage props, which AUSA Gezon employed to point to the boxes as his "evidence" when calling Marcusse a "liar" over and over again in closing arguments (Decl. No. 296-305).

25.     In subsequent U.S. Tax Court litigation in which Marcusse prevailed, having raised "unclean hands" and now allowed to use the same bank records to fully challenge the $936,626 in unre-ported, uncharged "income" with which IRS Agents Flink and Darline Goeman had ambushed her to support the "element" of "gain" at trial, Judge Gustafson authenticates Agent Forrester's FBI employment, admitting his SSBT endorsement letters (Decl. No. 7, 212-227, 356-360, 546-549).

26.     In subsequent FOIA litigation, Defendants produced "authenticated" Bates-stamped bank records proving the bank records Marcusse tried to submit at trial had been legitimate, AUSA's Schipper and Gezon had lied to the jury, alleged fictitious crimes, suborned IRS perjury, and sub-mitted falsified bank record summary exhibits to create guilt  (Decl. No. 6, 369-387, 606-628).

27.     The evidence shows Defendants based their fictitious charges upon evidence tampering, which they used to misrepresent the hedge fund at SSBT as an illegal "high-yield" (prime bank) investment fraud in order to testify there were no "investments" made in the hedge fund, as "promised", because "high-yield" programs do not "exist" (Decl. No. 139-181).

28.     The evidence shows AUSA Gezon suborned the perjury of investigative witnesses Agents Moore and Flink, and Federal Reserve "expert" Leonard Zawistowski, by removing a page from the hedge fund promotional materials to testify that page was instead an "update" to an unrelated, withdrawn prime bank debenture program for which there had been an immunity contract agree-ment to "victim" status (Decl. No. 108-111, 139-164 173-181, 262-294, 622-633, 643-662).

29.     Their evidence tampering scheme also provided the fraudulent means for Defendants to nullify the immunity contract by falsely claiming Marcusse continued to promote "high-yield" in-

vestments after having had "notice" they were illegal (Decl. No. 280-287, 586-595, 647-662).

30.     The record shows Defendants presented <u>no</u> investors to testify at trial in support of their charge the hedge fund had been part of the prime bank program (Decl. No. 158-163).

31.     AUSA Gezon instructed the jury to disregard the evidence of investor contracts as "gobble-dygook", which had afforded Marcusse with the discretion to select investments, thereby fabricating support for the element of "false representations" that the only product promised was the prime bank investment, except admitted evidence also showed it had been withdrawn in writing before the first of 39 mail fraud counts in the indictment (Decl. No. 145, 271-279, 285-287).

32.     Defendant evidence tampering is proven from the *admission* of AUSA Jennifer McManus in her 2255 Response the hedge fund exhibit in her office files *included* the page removed from it for the criminal trial, except she excuses it by attesting the exhibit had been submitted intact at trial. Having not been present, not only was AUSA McManus an incompetent witness, but she is proven wrong where she contradicted Agent Flink's and Leonard Zawistowski's testimony cited in Marcusse's brief the court refused to file (Decl. No. 106, 139-164, 173-181, 246-268, 290-294).

33.     AUSA McManus filed her hedge fund exhibit misrepresentations under the signature of US Attorney Donald Davis, who had cause to know the exhibit had been falsified before submission as he had been present, having been the attorney who fraudulently attested that Agent Forrester did not exist to bar Marcusse's good-faith reliance defense (Decl. No. 23-24, 31, 36-37, 630, 663-667).

34.     The evidence shows that in subsequent FOIA litigation, the Defendants could produce <u>no</u> investor statement (FBI 302's) to support their charge the hedge fund was promoted as part of the prime bank program (Decl. No. 18, 140, 180, 631-633).

35.     The record shows Defendant IRS had actual knowledge Gerard Forrester was a statutorily defined foreign agent of Bahamian principals and therefore had been legally obligated to register

as such. This fact was established in U.S. Tax Court when IRS counsel admitted, "said letters exist", and Judge Gustafson authenticated and deemed admitted Agent Forrester's SSBT endorsement letters on official FBI letterhead into the court's official record per Rule 90(c) (Decl. No. 546-548).

36.     The evidence shows Defendant DOJ had actual knowledge Gerard Forrester was a statutorily defined foreign agent of Bahamian principals and therefore legally obligated to register as such. This was established as fact when AUSA McManus was served with a copy of Judge Gustafson's Order admitting Agent Forrester's letters into the record (Decl. No. 548, 550, 566-568).

37.     The record shows AUSA McManus, IRS Special Agent Steve Corcoran, and Criminal Chief Brian Delaney falsify documents given to Marcusse in response to her FOIA litigation by redacting the evidence showing Agent Forrester had cause to know he was misleading the public by endorsing SSBT when it was being investigated for money laundering, thereby denying him the exemption under 22 USC 613(d)(1) for "bona fide" commercial activities  (Decl. No. 645-652).

38.     The evidence was obtained 10 years after trial online by a friend in the real world proving not only did Gerard Forrester "exist", but he had worked for the FBI for 30 years, which was from the website _he_ published under J-F Investigations calling himself "Jerry Forrester" where he even admits to obtaining payments from SSBT as a "notable client" (Decl. No. 26-31, Exh. 9).

39.     The evidence shows Forrester included his FBI badge in his website, which contained a signature substantially similar to those contained in the SSBT endorsement letters AUSA's Davis and Gezon had accused Marcusse of fabricating to "steal" from clients (Decl. No. 30-31, Exh. 5, 7).

40.     The evidence shows Defendants knew or had cause to know from the time of the initiation of their prosecution against Marcusse that Gerard "Jerry" Forrester worked for the FBI, causing her convictions to be VOID ab initio, which nullifies any statutory prohibitions to having her instant claims considered, or to obtaining relief, including under the Administrative Procedure Act (APA),

where she was also barred from filing claims in the trial court and in the custody of the FBOP.

41.     The record shows that in response to Marcusse's second 2255 submitting the newly-discovered evidence establishing Gerard Forrester's bribery scheme and Defendant trial miscon-duct in making false representations to obstruct a good-faith reliance defense mandating acquit-tals, AUSA McManus fraudulently reverses their story (See No. 21-22, supra), by misrepresent-ing to the Sixth Circuit Court of Appeals, "Gerard Forrester, whom the government was unable to locate at the time at trial, was living under an 'alias' of 'Jerry'" (Decl. No. 636-638).

42.     Shortly after AUSA McManus's response, Marcusse's legal papers are confiscated by FCI Tallahassee staff, and she is threatened that if she does not agree to dispose of all of her papers, she would be placed in the SHU for a year, causing Case Manager Ed Stanley to risk his job to intervene by obtaining an emergency transfer for her to FCI Waseca (Decl. No. 637-640).

43.     In response to Marcusse's Reply establishing AUSA McManus was misrepresenting the trial record, Sixth Circuit Judges Norris, Batchelder and Gibbons fraudulently protect the false repre-sentations of AUSA's McManus, Gezon and Davis and circumvent the relief due by materially amending the Agent Forrester bribery claim to "prosecutors were bribed" (Decl. No. 641).

44.     These Sixth Circuit judges had cause to know that amending the Agent Forrester bribery claim to "prosecutors were bribed" would not support an innocence claim (Decl. No. 642).

45.     The protection of AUSA McManus lends the appearance of unlawful ex parte communi-cations with the Sixth Circuit judiciary, similar to the trial judge (See Counts VI - X).

46.     This bribery claim was never determined where a second 2255 is not appealable.

47.     As per 18 USC 709, Agent Forrester had cause to know he was required to obtain the written authorization of the FBI Director before using official FBI letterhead to endorse SSBT.

48.     Accordingly, Marcusse requested Defendant FBI produce the written authorization for

Gerard Forrester to have prepared and placed into the public domain two letters on FBI letterhead in his official capacity endorsing SSBT and majority shareholder Mohamed Harajchi (See Exh. A).

49.    Defendant FOIA responses establish written authorizations by the FBI Director, as mandated by 18 USC 709, false advertising, and registration statements required to be filed with the Attorney General, as per 18 USC 219 and 22 USC 612(a), do <u>not</u> exist (See Exh. B, C, D, E, F, G,H) (See also Decl. No. 697-705).

50.    A Complaint against Gerard Forrester for failing to register under FARA was served on Defendant Attorney General but there has been no response (See Exh. I, J) (Decl. No. 706-707).

51.    Defendant Attorney General has neither required Mr. Forrester to register nor undertaken a waiver rulemaking, in violation of 22 USC 617, 618(a)(1), (e), (h).

52.    Where an imputed conflict of interest under 5 CFR 2635.402, 28 CFR 45.2, or 18 USC 208(a) exists, pursuant to 18 USC 208(b),(d), 216, Defendants employed at DOJ, FBI, IRS and Federal Reserve were required to fully disclose that interest to a supervisor and obtain "in advance a written determination made by such official that the interest is not so substantial as to be deemed likely to affect the integrity of the services which the Government may expect from such officer or employee", or be subject to penalties and injunctions.

53.    There is a statutory prohibition under 5 CFR 2640.103(a), as per 18 USC 208(a), for Defendants employed at DOJ, FBI, IRS and Federal Reserve "from participating personally and substantially in an official capacity in any particular matter in which, to his knowledge, he or any other person specified in the statute has a financial interest, if the particular matter will have a direct and predictable effect on that interest."

54.    The evidence shows Defendants employed at DOJ, FBI, IRS and Federal Reserve collaborated in violations of law and as accessories after the fact to conceal the evidence the theft of funds

from SSBT had a "direct and predictable effect" on Marcusse's case, establishing conflicts of interest, actual and imputed, in having charged her with causing the loss of these funds.

55.     The record shows Defendant DOJ lawyers willfully shirked their duties under conflict of interest statutes and regulations by falsely representing to the court Agent Gerard Forrester of the FBI did not "exist" to deny their own "knowledge" of an imputed conflict of interest when they had cause to know otherwise (See No. 21-22, supra).  After getting caught lying at trial, instead of seeking to remedy wrongful convictions, Defendant DOJ lawyers fraudulently doubled down by falsely attesting they couldn't find Forrester during the trial, which if credited as true, shows they *did* have knowledge of an imputed conflict of interest, even going so far to protect themselves by using prison staff to threaten Marcusse with an "order" to destroy her proof (See No. 35-42, supra).

56.     Under 28 USC 530B, the mandate to obey Bar Association Rules, including Rule 3.8(g),(h), Special Responsibilities of a Prosecutor, he or she must "promptly disclose" the evidence a convicted defendant did not commit the offense.

57.     The evidence shows no delegated authority existed under 28 USC 528, no discretion under 28 USC 547's exceptions clause, nor appropriations under 28 USC 530C, for AUSA's Gezon and Davis to conspire with Agents Moore and Flink and Leonard Zawistowski to pursue an indictment based on the hedge fund due to imputed conflicts of interest from Agent Forrester's bribery conspiracy with SSBT's management to steal funds, further violating their oath of office under 28 USC 544.

**COUNT II**

**JURISDICTIONAL & SOVEREIGNTY DEFECTS**

58.     The evidence shows that when SSBT distributed the FBI endorsement letters signed by Agent Forrester as promotional devices with U.S. citizens and companies stating the bank was safe and compliant with U.S. money laundering laws, the letters were placed into the public domain

and, in turn, the Defendant FBI into the business of commercial banking (Decl. No. 11-13).

59.    The evidence shows SSBT issued a letter of guarantee on the principal of the funds Marcusse placed in a hedge fund per contract, which she had invested through an IBC (International Business Corporation)(Decl. No. 14).

60.    The evidence shows **Clearfield Trust** doctrine applied to Marcusse and her investment activities, causing the United States to have waived its sovereignty, and any claims arising from this matter to have been subject to federal common law, under which Defendants had no standing, delegation of authority, or discretion to pursue and maintain criminal charges, and the district court to have had no criminal jurisdiction where there are no common law offenses against the United States and Defendants to have no private right of action under mail fraud (Decl. No. 10-38).

61.    The record shows Agents Moore and Flink and AUSA Gezon knew the "Ponzi scheme" was a fictional charge as soon as they had the docket falsified to remove the arrest warrant so stating, presumably to protect Agent Moore's immunity from false arrest, and again when AUSA Gezon withdrew the "Ponzi scheme" from jury deliberation to avoid acquittals after defense closing arguments exposed the fact Agent Flink had committed perjury in testifying no investments were made, fabricating summary exhibits in support (Decl. No. 3-7, 111-119, 127, 242-279, 366-368).

62.    Defendants had cause to know they had no standing or discretion to pursue an indictment on criminal charges known to be fictional when based on falsified evidence; nor does criminal jurisdiction exist for a federal court to try fictitious charges (Decl. No. 107-160, 607-621).

63.    Defendants had cause to know there existed no delegation of authority, discretion, or public interest to have committed crimes or acted as accessories after the fact for the benefit of foreign principals in stealing from U.S. citizens, keeping stolen funds, and evading civil and criminal liability by framing Marcusse, a victim of these crimes, and fraudulently subrogating the claims of

investor victims to protect favored third parties from civil liability and restitution to them.

64.    These jurisdictional and sovereignty structural defects were never determined by any court.

## COUNT III

### EVIDENCE ESTABLISHING DEFENDANT FEDERAL RESERVE CONFLICTS OF INTEREST, ACTUAL AND IMPUTED, COLLUSION WITH DEFENDANTS DEPARTMENT OF JUSTICE, FBI, AND IRS AS ACCESSORIES AFTER THE FACT TO PURSUE FICTITIOUS CHARGES

65.    Defendant Federal Reserve "expert" witness Leonard Zawistowski testifies the Bahamas (hedge fund) program was an illegal prime bank investment fraud (Decl. No. 139-143, 244, 282).

66.    Under Marcusse's cross, Zawistowski admits his opinion was based on references to the "instrument" being traded as a "debenture", which established evidence tampering because this "instrument" was only in the withdrawn prime bank debenture program (Decl. No. 139-150).

67.    Marcusse has Zawistowski read from the hedge fund exhibit stating it traded in "stocks", asking him how he could consider that to be trading in nonexistent prime bank debenture instruments, to which he responds he didn't think it was impossible (Decl. No. 150-152, 718, 728-730).

68.    The record shows that Leonard Zawistowski had cause to know he had committed perjury based on evidence tampering (Decl. No. 139-152, 175-179, 265-267, 633, 728-730, 785).

69.    Under Marcusse's cross, Leonard Zawistowski also makes the admission his employer, the Federal Reserve, had "collapsed" the Bahamian banks, such as SSBT, causing the entire courtroom to gasp in shock (Decl. No. 477, 479, 715-725).

70.    Shortly after trial, Marcusse submits a motion to vacate the guilty verdicts based, in part, on Leonard Zawistowski's admission, except the court disregards it (Decl. No. 477).

71.    When the transcripts are published three months after trial, Leonard Zawistowski's admittance to Federal Reserve involvement in the losses had been removed (Decl. No. 478-479).

72.    The record shows 3 days after Complaint of Court Reporter Misconduct in removing bene-

ficial testimony, such as Federal Reserve's admitted culpability in the collapse of SSBT, Judge Robert Bell retaliates by filing Administrative Order making Marcusse a restricted filer for "communications...lacking in any legal merit...designed to harass and intimidate the recipients" (Decl. No. 480).

73.     The transcripts show Marcusse made _five_ subsequent references to Zawistowski's admission to ask why she was at the defendants' table in light of it, and when asking Agent Flink if he recalled it, he admits Zawistowski "could have" said it (Decl. No. 478-479, 562, 565-566, 633).

74.     In U.S. Tax Court, raising "unclean hands", Judge Gustafson finds sufficient cause to order the trial shorthand notes be produced, except Defendant IRS's counsel states Court Reporter Kevin Gaugier refused to comply, holding the Tax Court Order in contempt (Decl. No. 565-566).

75.     Although raised in the 2255, Judge Bell disregards the Zawistowski admission claim, having refused to file Marcusse's brief on the record (Decl. No. 105-106, 542-543).

76.     From references to Zawistowski's admission left in the transcripts, theft of transcripts by FBOP Supervisor of Education Jason Stiles during direct appeal, Tax Court's Order the shorthand notes be produced and Court Reporter Kevin Gaugier's refusal to comply, it can be reasonably presumed Defendant DOJ unlawfully pressured Gaugier to falsify and certify them, instructed Stiles to steal the transcripts, and had Gaugier disobey Tax Court (Decl. No. 478-479, 562, 565-566).

77.     In FOIA litigation for documents in support of Leonard Zawistowski's testimony to Federal Reserve involvement in SSBT's collapse, Jeanne McLaughlin responds, "_news articles_ did not indicate that U.S. authorities had been consulted or involved in any way in the investigation or closure of the bank [emphasis added]". This was irrelevant and evasive (Decl. No. 715-717).

78.     When asked for the Federal Reserve documents under FOIA allowing for Leonard Zawistowksi to contradict the "investments" definition set forth by Congress by defining publicly-traded stocks or a hedge fund as an illegal prime bank (high yield) debenture fraud, no relevant docu-

ments are produced, but instead it is admitted some were "destroyed" (Decl. No. 718-730).

79.    The evidence of Defendant DOJ's interference with Court Reporter Kevin Gaugier, pursuit of fictitious charges, and inability to produce documents in support of a selective, nonsensical definition for "investments" to fabricate guilt, establishes their conflicts of interest, rendering Marcusse's convictions NULL and VOID ab initio (Decl. No. 139-180, 479, 565-566, 730).

80.    The Federal Reserve conflict of interest claim has never been determined by any court.

## COUNT IV

### EVIDENCE ESTABLISHING DEFENDANT DEPARTMENT OF TREASURY BRIBERY, ACTUAL AND IMPUTED, INCLUDING A FINAL CONVICTION, COLLUSION WITH DEFENDANTS DEPARTMENT OF JUSTICE, FBI AND IRS AS ACCESSORIES AFTER THE FACT

81.    The evidence shows Treasury attorney James Kramer-Wilt, the government's "expert" on prime bank (high-yield) investment fraud, vetted Worldwide E Capital, LLC (Worldwide), and its principal Winfield Moon, in Las Vegas, Nevada, for Richard Gerry, who used the results of this investigation with Marcusse to promote them as legitimate (Decl. No. 40-41).

82.    The record shows that after the Moon investment failed, James Kramer-Wilt was fired from Treasury, charged with obtaining a bribe from Richard Gerry, causing both to plead guilty, be sentenced to prison, and Kramer-Wilt to be disbarred (Decl. No. 46-47).

83.    The evidence shows during trial, AUSA's Gezon and Davis falsely represent to the court Winfield Moon was "a promoter of high yield investment funds", contrary to Treasury's "expert" James Kramer-Wilt and in the absence of public records or evidence (Decl. No. 40, 45-48).

84.    The record shows Marcusse was denied James Kramer-Wilt as a witness for a good-faith reliance defense, which would have mandated acquittals, where stand-by counsel David Kaczor's advised the court he could not locate 3 or 4 defense witnesses to serve a subpoena, except Kramer-Wilt's supervised release had ended only a month before trial (Decl. No. 53-54).

85.     The record shows Defendant DOJ interfered with Kaczor where Kramer-Wilt's testimony would have exposed their submission of falsified summary exhibits claiming no investments made, as it was expedient to misrepresent the Moon investment as a "nonexistent" prime bank fraud to presume transfers to it as "income" to fabricate "gain" for Marcusse (Decl. No. 39-59, 230-234).

86.     The evidence shows Agents Flink and Goeman selectively carved $600,000 out of the $2.1 million in wire transfers to Winfield Moon's company, Worldwide, testifying it was "income" Marcusse had illegally failed to report, fabricating substitute returns in support, which were based on evidence tampering to falsely represent she owned Worldwide by removing Page 2 of its bank account application form proving Moon was its sole owner (Decl. No. 42-44, 209-227, 401).

87.     The evidence shows AUSA Schipper fraudulently obstructs the Worldwide bank records Marcusse tried to submit by claiming they were bogus (Decl. No. 4-9, 212-214, 225, 608-613).

88.     The record shows AUSA Schipper is thereby empowered to ask if Marcusse "spent" the money in Las Vegas partying and gambling, causing her to repeatedly protest he was keeping out the records that proved she invested it, and AUSA Schipper to become so enraged that Judge Bell dismisses the jury to advise him to take a walk and cool off (Decl. No. 55-56, 225-227).

89.     Marcusse was denied good-faith reliance on her accountant, an enrolled agent of 50 years, and tax attorney, which mandated acquittals, when Judge Bell changed the "crime" in the jury instructions ("law of case") to "failure to file" after AUSA Gezon withdrew the "Ponzi scheme" in rebuttal closing arguments to avoid acquittals (Decl. No. 250, 295-317, 330-332, 347-360, 366-368).

90.     After trial, Marcusse files Nevada Secretary of State Worldwide filings proving Winfield Moon was its only member, except Judge Bell ignores it to impose a 25-year sentence based on guilty verdicts derived by Defendant crimes and defective law (Decl. No. 223, 344-354, 369, 416).

91.     Defendants DOJ and IRS collaborate with Judge Bell to secretly remove similar transfers to

investments for a co-defendant's sentencing establishing willful fraud (Decl. No. 209, 369-379).

92.    In U.S. Tax Court litigation, Judge Gustafson finds sufficient cause of evidence tampering with the Worldwide bank account documents to order production, except IRS counsel attests Defendants refused to provide it, "purging" documents in response (Decl. No. 222-223, 563-567).

93.    Under FOIA, Marcusse requests the actual bank record documents to support Agent Flink's one-page summary exhibits claiming she "stole" all the money and had unreported "income", which results in written admissions by William Stewart III, EOUSA, and Janice Galli McLeod, OIP, that Agent Flink's exhibits could _not_ be supported by the bank records (Decl. No. 606-621).

94.    Although _all_ of Marcusse's convictions rested on this selective, fictitious "income", in the 2255, Judge Bell denied leave to file her motions including the new FOIA admissions proving Agent Flink's testimony and summary exhibits were entirely falsified as well as the Tax Court admissions of contempt of court and a Decision in her favor (Decl. No. 57-59, 233-241, 380-383, 566-570).

95.    The claims of a Treasury conflict of interest and admissions under FOIA that key IRS summary exhibits were fabricated have never been determined by any court.

### COUNT V

**EVIDENCE ESTABLISHING DEFENDANT ATTORNEY GENERAL CONFLICT OF
INTEREST, ACTUAL AND IMPUTED, POLITICAL FAVORITISM, AND COLLUSION WITH
DEFENDANTS DEPARTMENT OF JUSTICE, FBI AND IRS AS ACCESSORIES AFTER THE FACT**

96.    The evidence shows that rich businessman Robert Plaster, who admitted at trial to having "kept" the money invested with him, was a friend of and political benefactor to John Ashcroft, the U.S. Attorney General in power at the time, and as the direct result of Marcusse's prosecution, he was protected from civil and criminal liability for having defrauded her (Decl. No. 60-99, 628).

97.    At arraignment when Marcusse asks how the DOJ could run a "protection racket" for Robert Plaster, John Ashcroft's friend, the evidence shows U.S. Marshals attacked her so violently a disk

was herniated in her back and the leg broken off the wood table where she had been sitting over their haste to silence and remove her from courtroom witnesses (Decl. No. 3, 400, 426, 592).

98.    The evidence shows Agent Flink denies MLC was an investment, falsely claiming $160,000 transferred to MLC for Marcusse's living expenses (Decl. No. 3, 68, 182-183, 191, 399, 401-406).

99.    The evidence shows Defendants fraudulently obtained a search warrant based on admittedly false drug-trafficking allegations to seize bank and business records from Marcusse's attorney, which would have established $2 million was transferred to MLC, presumably so she would not have access to them to submit as defense exhibits at trial (Decl. No. 184-194, 407-408).

100.    The evidence shows that in Tax Court, Judge Gustafson ordered the IRS to produce the affidavit and warrant, except Defendants refuse, presumably in fear of exposure of their criminal acts, conflicts of interest, and likely FISA court involvement (Decl. No. 208, 408, 564, 566).

101.    After Judge Bell denies Robert Plaster as a witness for Marcusse to testify to the $2 million she invested in MLC, he was instead called as a last-minute government witness after investors testified to his involvement and the $1.2 million transfer to him (Decl. No. 183, 190, 202).

102.    The evidence shows Defendants used Robert Plaster to commit perjury and submit fabricated evidence, which attributed a land purchase contract (GX-160) to Marcusse, who was not a party to it and never saw it before his testimony, but which enabled the fraudulently amended storyline she owned MLC and the transfer to Plaster was not an investment but a "nonrefundable down payment" on land she was purchasing (Decl. No. 60-99, 191-208, 384, 392-410).

103.    Robert Plaster's perjury also served to conceal the theft of $16 million due investors from an unrelated investment, which "disappeared" after transfer to a MLC bank account at Union Planters Bank (Decl. No. 3, 83-89).   Marcusse was never a signatory on any MLC bank account.

104.    In withheld 302's obtained in FOIA litigation, the evidence shows Agent Moore obtained

documents from Butte Information Technology Center two years before trial to prove Marcusse did not form, operate, or own either MLC or Worldwide (Decl. No. 401).

105.    The evidence shows that under John Ashcroft's tenure as Attorney General, another unrelated prosecution financially benefited Robert Plaster by enabling his son Steve to secure the Branson Inn as the anchor for their $420 million Branson Landing Project (Decl. No. 100-106).

106.    Attorney General John Ashcroft did not recuse himself from either prosecution.

107.    The Attorney General conflict of interest has never been determined by any court.  Judge Bell refused to file Marcusse's 2255 brief with the exhibits proving Robert Plaster committed perjury and submitted falsified evidence at trial (Decl. No. 104-105).

## COUNT VI

### DEFENDANTS DOJ AND IRS OBTAIN UNLAWFUL CHEVRON DEFERENCE FROM BIASED JUDGE TO PURSUE FICTITIOUS CRIMES FOR TRIAL & PROTECT CULPABLE THIRD PARTIES, AS SHOWN BY SECRET & SELECTIVE REVERSAL AFTERWARDS FOR ONE CO-DEFENDANT ONLY

108.    **Chevron** doctrine is a principle of administrative law requiring courts to defer to interpretations of statutes made by those government agencies charged with enforcing them, unless such interpretations are unreasonable.  **Chevron v. Natural Resources**, 467 US 837 (1984).

109.    The public record establishes that it was the practice of the judiciary in the Western District of Michigan and Sixth Circuit Court of Appeals to afford **Chevron** deference to criminal statutes (Decl. No. 788-791).

110.    The record shows that before an indictment is obtained, Judge Bell secretly assigns himself to her case, as shown by false entries made on the docket (Decl. No. 113-116).

111.    Before Defendants present their first witness, the record shows Judge Bell presumes the "facts" in the indictment to bar Marcusse from the defense of using bank records to prove third-party culpability for investor losses (Decl. No. 122-125, 127-135).

112.    Defendants had cause to know Marcusse had the "absolute right" to use source documents to the bulk bank record exhibits supporting Agent Flink's summary exhibits, except they obtain a "protective" order to obstruct **Brady** materials and bank records from her (Decl. No. 120-122, 128).

113.    The evidence shows Agent Flink testifies to no investments made by limiting definition of "investments" to a fictional product derived out of evidence tampering that was never promoted to investors, presumably to make showing innocence impossible, as facilitated by Judge Bell's denial for Marcusse to cross examine investor witnesses (Decl. No. 139-181, 242-279).

114.    Agent Flink admits he didn't "count" any investments in his exhibits (Decl. No. 264-266).

115.    The record shows Judge Bell admits Agent Flink limited the definition of "investments" when denying a motion for production of bank records in her 2255 case (Decl. No. 778-780).

116.    The record shows Defendants pursued uncharged, unreported "income" claims derived from wire transfers to investments to fabricate "motive" in front of the jury, having relied on Judge Bell to defer to their interpretations of the tax code and statutes in granting a pretrial motion in limine (Decl. No. 7, 43, 57-58, 209, 212-216, 308, 315-317, 326-327, 350-352, 356-360, 612-614).

117.    The record shows Defendants secretly removed transfers to investments from the "income" of one co-defendant after trial, showing they knew their "investment" definition and criminal charges based on it against Marcusse were false and fraudulent (Decl. No. 209, 369-379).

118.    The evidence shows in subsequent FOIA requests and litigation, Defendants admitted to being unable to produce the checks or wire transfers in support of Agent Flink's summary exhibits (Decl. No. 608-614), which were sufficient grounds to vacate Marcusse's convictions, except Judge Bell "declined" leave to file this proof during her then-pending 2255 case (Decl. No. 608-614).

119.    The record shows in the 2255, Judge Bell finds the government *never* denied investments were made, which he had cause to know was fraud on the court where Agent Flink concluded re-

buttal testimony by attesting he found no evidence investments were made (Decl. No. 775(g).)

120.    A **Chevron** violation is established by evidence Defendants fabricated charges Marcusse had

unreported "income" from "stealing" a million dollars of investor funds and making no "invest-

ments" for $10 million in "proceeds", which caused guilty verdicts based on evidence tampering

and suborning perjury to promote a nonsensical definition of "investments" not based on legiti-

mate promotional materials or the actual bank records (Def. No. 145-164, 212-27,606-621).

121.    On 6/28/24, the Supreme Court overruled **Chevron** deference. See **Loper Bright Enterprises**

**v. Raimondo**, 603 US _____.

122.    The record shows the issue of whether the Defendants' interpretations and term definitions

were reasonable and lawful was preserved, but barred from consideration (Decl. No. 775-798).

123.    The reversal of **Chevron** doctrine by the Supreme Court now allows for claims to be filed

where its prior usage enabled Defendants to file criminal charges based on fictitious "facts" and

expect deference by the courts to make them irrebuttable presumptions (Decl. No. 797-798).

124.    As an innocent defendant, Marcusse was grievously injured by being railroaded into prison

on a 25-year sentence over fictitious charges made a moving target by this abusive *civil* "doctrine"

condoned by a federal judiciary emasculated by unconstitutional deference in a *criminal* case,

which violated her rights to be informed of the nature and cause of the charges where the inter-

pretation of statutes and terms were rendered ambiguous by fraudulent manipulations to schizo-

phrenic levels, facilitating Defendant criminal conduct to deliver and guarantee convictions.

## COUNT VII

**DEFENDANTS DOJ, FBI AND IRS WITH CONFLICTS OF INTEREST, ACTUAL AND IMPUTED,
FRAUDULENTLY CIRCUMVENT PROVISIONS OF AN IMMUNITY CONTRACT TO PLAINTIFF**

125.    The evidence shows that Marcusse would have been entitled to the protection of an

immunity contract as a "victim" for investing in prime bank debentures, barring her prosecution, but for Defendant DOJ attorneys falsely representing the hedge fund at SSBT and investment with Moon as high yield (prime bank) investment frauds (Decl. No. 280-289).

126.     The evidence shows AUSA's Gezon and Reid Pixler submitted the immunity contract into evidence to affirm its validity, only to then employ evidence tampering and perjury to claim Marcusse continued to promote prime bank investments after being warned by the contract they were illegal  (Decl. No. 102-104, 280-287).

127.     In subsequent FOIA litigation, the evidence shows AUSA McManus, Criminal Chief Brian Delaney, and IRS Special Agent Steve Corcoran engaged in further evidence tampering with the immunity contract document before "authenticating" and producing it, which acted to protect AUSA's Gezon and Pixler's fraud and conceal the fact Agent Forrester had cause to know he was making false representations in his SSBT endorsement letters (Decl. No. 280-287, 586, 643-662).

128.     The record shows Marcusse was never heard on any immunity contract or victim claims barring her prosecution (Decl. No. 586-587, 693-696).

## COUNT VIII

### DEFENDANTS WITH CONFLICTS OF INTEREST, ACUTAL AND IMPUTED, DENY ALL DUE PROCESS AT TRIAL BY FRAUDULENTLY OBSTRUCTING FUNDAMENTAL RIGHTS

129.     Before they obtained their indictment with fictitious charges, the evidence is overwhelming to show AUSA's Gezon and Davis solicited Judge Bell to assign himself to Marcusse's case to fix its outcome, using him to repeatedly falsify the court's docket, and execute an invalid warrant, which appears to have been intended to preserve FBI Special Agent Samuel Moore's immunity from false arrest and lack of probable cause if she were ever heard by an honest judge (Decl. No. 107-181).

130.     The record shows that once Marcusse asserts the right to represent herself, as she didn't

have the funds for an uncompromised lawyer, pretrial release is denied (Decl. No. 124, 421-422).

131.    The record shows when Marcusse could not be deterred from insisting on her right to a

trial, even after violence is incited against her, AUSA's Gezon and Schipper demand a pretrial

"protective" order for **Brady** materials, including the bank records (Decl. No. 4-7, 122-138, 179-

181, 242-243, 296-298, 421-424, 606-613).   Defendant DOJ attorneys  had cause to know

Marcusse had no other access to such records while trapped in jail to show the jury she made

investments and prove third-party loss causation.

132.    Marcusse has never found another criminal case in which such an unconstitutional order

blocking **Brady** materials was granted in the absence of any bad acts, organized crime involvement,

threats against witnesses, or criminal history of violence, none of which were present.

133.    The record shows after Judge Bell rules Marcusse could not use bank records as a defense

to a "Ponzi scheme" charge and she responds by questioning his court's constitutionality, he rea-

sons that, because she wouldn't "listen" to him, she did <u>not</u> have the rights to make objections or

cross examine witnesses while irrationally acknowledging she had the "right" to represent herself

and threatening her with removal if she did not remain "silent"  (Decl. No. 5-6, 128-129, 164).

134.    Judge Bell had cause to know he had no discretion to deny Marcusse the use of bank re-

cords for her defense where, during a previous trial he conducted, AUSA Davis had obstructed

bank record source documents only to be reprimanded by the Sixth Circuit, who held on appeal it

was an "absolute right" of a criminal defendant under Rule 1006 (Decl. No. 6, 127-128, 298, 487).

135.    By obstructing Marcusse's basic rights, the record shows Judge Bell acted to presume her

guilt before trial started, suggesting unlawful ex parte collaborations with Defendant DOJ attor-

neys and Kaczor to protect admission of key exhibits from objection while obstructing her from

questioning investor witnesses about the exhibits to expose fraud (Decl. No. 127-233, 242-279).

136.    The record shows by Judge Bell having turned over control to standby David Kaczor, it allowed for Defendant DOJ attorneys to bribe this bankrupt attorney in private practice with the Senior Litigator's position at the Public Defender's Office in exchange for sabotaging her defense by refusing to make objections to falsified exhibits and collaborating with AUSA's Gezon and Schipper to deny right to present a defense, which otherwise would have allowed for bank records and witnesses to prove third-party culpability and that the charges were fictitious (Decl. No. 5, 51-54, 129-130, 149, 165-174, 178, 192-193, 212-232, 247-258, 290-292, 296-317, 328, 368, 456, 516, 541).

137.    Marcusse was denied a public trial, as established by a defense witness, who was a member of the largest investor family, testifying the Attorney General's Office had falsely advised investor victims no trial was scheduled while the month-long trial was being conducted, causing the courtroom to be empty (Decl. No. 165-166).

138.    The evidence shows voir dire was unlawfully closed to the public, which allowed Defendants to engage in jury tampering where U.S. Marshals "accidentally" frog march Marcusse in handcuffs in front of the jury pool, acting as if she were a dangerous terrorist (Decl. No. 451-453).

139.    Where investors were obstructed from attending trial, AUSA's Gezon, Davis and Schipper, IRS Agents Flink and Goeman, FBI Agent Moore, and Federal Reserve "expert" Zawistowski were protected from being caught falsifying the type of investments promoted (Decl. No. 107, 167, 180).

140.    The Sentencing Judgment for restitution to Defendant IRS was VOID where a participant in an offense cannot be considered a victim, failure to file was admittedly never charged in an indictment, fabricated tax returns were submitted by Agent Goeman, Marcusse was prohibited from challenging the claims with bank records from the bulk exhibits, and afterwards when she could use the bank records, she prevailed in U.S. Tax Court (Decl. No. 4-7, 57, 212, 549-550, 583, 775).

141.    The Sentencing Judgment for restitution to investor victims was VOID where uncharged

third parties caused the losses, the "crime" was amended in jury instructions (law of the case) to an uncharged right to control money honest services fraud theory, which was contrary to investor contracts and testimony, and amended again at sentencing to an uncharged "specialized high return investment", which is not even a crime (Decl. No. 3, 14-18, 275-279, 316-317, 583).

## COUNT IX

**DEFENDANTS WITH CONFLICTS OF INTEREST, ACTUAL AND IMPUTED, HAD <u>NO</u> DISCRETION TO COMMIT FELONIES TO PREVAIL, SUCH AS CONSPIRACY TO INCITE VIOLENCE; DRUG FOOD AND WATER; FALSIFY DOCKET, TRANSCRIPTS, AND TAX RETURNS; TAMPER WITH JURY AND WITNESSES; ILLEGALLY WIRETAP; COMMIT OR SUBORN PERJURY; FALSIFY, STEAL, OBSTRUCT, PURGE OR DESTROY EXCULPATORY DOCUMENTS TO SUPPORT FICTITIOUS CHARGES; FALSIFY AFFIDAVITS AND WARRANTS; ILLEGALLY ENTER PRIVATE RESIDENCE TO DESTROY RECORDS**

142.    The evidence shows that when Marcusse is arrested, FBI Special Agent J.R. Smith refuses to produce a warrant when requested (Decl. No. 112).

143.    The record shows the docket was repeatedly falsified once Judge Bell took control to report Agent Moore's arrest warrant was executed for Marcusse's arrest when instead the underlying document shows it was an expired civil arrest warrant from the first grand jury that did not indict and which was never served on her (Decl. No. 113-118).

144.    At trial, Agent Smith commits perjury to attest he did not arrest Marcusse until after an indictment was returned (Decl. No. 467-468).

145.    Where the evidence shows Agent Moore made knowingly false representations in his Affidavit to the Criminal Complaint for a warrant, the docket was falsified, and Agent Smith lies at trial, it can be reasonably presumed AUSA's Gezon and Davis colluded with Judge Bell to protect Agent Moore's immunity for fabricating probable cause and false arrest (Decl. No. 107-121, 467-468).

146.    The evidence shows prisoners and U.S. Marshals were solicited to threaten, harass, and commit violence against Marcusse, presumably for purposes of intimidation to coerce her into

pleading guilty, silence her objections, and obstruct access to court (Decl. No. 421-424, 743-746).

147.    The evidence shows Defendants colluded in the repeated distribution of drugs into Marcus-se's food and drink in jail custody before court appearances, presumably to obstruct access to court and impair her ability to cross examine their perjurious witnesses (Decl. No. 434-449).

148.    The evidence shows when Marcusse complains at arraignment of a "protection racket" being run by Defendants for uncharged third parties, she is attacked so violently from behind to silence and remove her, she is injured and the table leg broken (Decl. No. 400, 426, 428, 592, 743).

149.    The evidence shows when court refuses to file complaints of violence, illegal druggings, and conflicts of interest barring prosecution, Marcusse threatens to have Sheriff Mercer serve them, except before filing, witness affidavits and other exhibits are removed to eliminate her proof. De-fendant interference is reasonably presumed where no investigation or sanctions are ordered, but instead her allegations are used to find she's "irrational" and dangerous in support of a competen-cy exam order, the opinion given to the media to taint the jury pool, and the means for involun-tary drugging invented, which causes her to refuse to cooperate in the exam (Decl. No. 425-433).

150.    The evidence shows Defendants falsify affidavits to allege bogus drug trafficking for a war-rant on Marcusse's attorney to confiscate records so she can't use them at trial (Decl. No. 182-189).

151.    The evidence shows Defendants use court-appointed defense attorney Ken DeBoer to falsi-fy co-defendant drug-trafficking admissions. When caught, DeBoer modifies documents to keep admission intact, Judge Bell and DeBoer lie at sentencing hearing to cover up (Decl. No. 456-466).

152.    In U.S. Tax Court, Judge Gustafson finds sufficient cause to order production of affidavit and warrant alleging drug trafficking, which Defendants refuse to do, holding the Order in contempt, lending sufficient cause to show it was unlawfully obtained in FISA court (Decl. No. 564-566).

153.    The evidence shows yet another co-defendant is solicited for a bribe on behalf of Judge Bell

by court-appointed defense attorney Anthony Valentine, which is the same co-defendant made a "restricted" filer after sentencing (Decl. No. 354, 505-507, 531).

154.    The evidence shows that AUSA's Gezon and Schipper tampered with the jury by having private meals with them during trial (Decl. No. 346).

155.    The record shows Judge Bell met with the jury privately twice during trial, including immediately after Defendants were exposed obstructing the bank records (Decl. No. 298-303).

156.    The record shows that AUSA Schipper tampered with their witnesses by signaling them as to how they were to answer questions from behind Marcusse's back (Decl. No. 172).

157.    The record and evidence show AUSA's Gezon and Schipper suborned the perjury of key "investigative" and "expert" witnesses (Decl. No. 43, 153-155, 182-183, 191, 209, 213-214, 219-225, 245-250, 254, 265-268, 282, 356-357, 390-391, 403-405, 557, 608-619  (Flink); 209, 212, 217-218, 221-225, 356, 390-391 (Goeman); 142-152, 156-159, 176, 244, 282, 479 (Zawistowski); 10, 17-18, 111, 114-119, 139-142, 150-152, 407, 467-468, 566, 627-628 (Moore).)

158.    The evidence shows AUSA's Gezon, Davis and Schipper falsified promotional materials and then fraudulently incorporated the wrong investor contracts into them so they could presume the contracts were void (Decl. No. 144-164, 262-268, 272-274, 280-289, 500-501, 586-587, 632-633).

159.    The evidence shows IRS Agents Flink and Corcoran tampered with and intimidated every trial witness by taking pictures of them and asking about their tax returns (Decl. No. 344).

160.    The record shows Agent Flink tampered with and intimidated the grand jury by being present during witness testimony (Decl. No. 345, 429).

161.    The evidence shows Revenue Agent Goeman fabricated tax returns for Marcusse at trial (Decl. No. 212-227).

162.    The evidence shows Defendants engaged in unlawful ex parte collaborations with Judge

Bell to submit fictitious uncharged, unreported "income" misdemeanor charges to fabricate "gain" to support felony charges in "amended" jury instructions, as shown by the collaboration with Judge Bell to secretly remove similar investment transfers from a co-defendant's losses and restitution to the IRS and in falsifying court records to do so (Decl. No. 7, 295-317, 326-332, 371-378).

163.    The record shows Defendant DOJ attorneys illegally wiretap Marcusse's table during trial to listen to her conversations with defense attorney David Kaczor (Decl. No. 168-171).

164.    The evidence shows Defendant DOJ attorneys falsify the trial transcripts to remove admission to Federal Reserve culpability in losses (Decl. No. 477-480, 496, 551-567, 583).

165.    The evidence shows Defendant DOJ attorneys solicited jail personnel to confiscate all of her legal papers to obstruct Marcusse's right to submit written objections to the presentence report, which allowed Judge Bell to presume all of the false and fraudulent "facts" provided by Defendants DOJ, FBI and IRS to inflict an unconstitutional and illegal 25-year sentence (Decl. No. 369-420).

166.    The evidence shows Defendant DOJ attorneys solicited FBOP personnel, including Special Investigative Services (SIS), two different supervisors of education, wardens, and guards to make threats, imprison Marcusse in the SHU, and confiscate her legal papers to interfere with court deadlines (Decl. No. 369, 379, 486, 493-496, 546-550, 562, 634-635, 639-640).

167.    The evidence shows illegal entry was made in the home where Marcusse's business records were being stored to target and destroy them shortly after Judge Gustafson's Order setting trial in U.S. Tax Court, which was while her 2255 was pending (Decl. No. 28, 241, 583, 603-605).

168.    Given its timing, this illegal entry was presumably ordered by Defendants DOJ and IRS where her convictions relied on maintaining fictitious "income" claims and photos showed the top of a locked wooden filing cabinet pried off but no valuables stolen (See Exh. 8 to Declaration).

169.    Defendant IRS's counsel reports in a "sealed" motion Brian Delaney, Criminal Chief, U.S.

Attorney's Office, admitted to having "purged" documents in apparent contempt of Judge Gustafson's Order to produce documents, rendering IRS counsel unable to comply (Decl. No. 566).

170.    The evidence shows Defendant IRS repeatedly lied in FOIA responses by denying they had documents or bank records, thereby obstructing Marcusse from obtaining them until after her 2255 was denied, at which time AUSA Jenny Knopinski discloses the IRS CID had just "located" 60 boxes or 120,000 documents (Decl. No. 623-627).

## COUNT X

**DEFENDANTS WITH CONFLICTS OF INTEREST, ACTUAL & IMPUTED, CAUSED DENIAL OF ALL DUE PROCESS AND ACCESS TO THE COURTS FOR DIRECT APPEAL & 2255 PROCESSES, INCLUDING HAVING THE TRIAL JUDGE VIOLATE JURISDICTION DURING APPEAL TO SET UP MEANS TO DENY INNOCENCE CLAIM FOR THE 2255 CASE AND HOLDING U.S. TAX COURT ORDER IN CONTEMPT BY PURGING DOCUMENTS**

171.    After the Supreme Court invalidated honest services fraud convictions in 2010, Judge Bell denies leave to file a **Skilling** innocence claim during the 2255 case (Decl. No. 533, 544-545).

172.    The evidence shows the "offense", however defined, was not reasonably foreseeable, the losses and restitution were not reduced by "services" rendered, i.e., investments made, as mandated by law, and which would have reduced the losses to zero, allowing for no restitution and no imprisonment (Decl. No. 3, 120-121, 369, 379, 416).

173.    On direct appeal to the Sixth Circuit, the record shows _none_ of Marcusse's claims were addressed in their decision where Judges Bertelsman, Sutton and Rogers denied her petition for rehearing by falsely attesting they had considered her claims, only to reverse course in response to her petition for recall of the mandate for fraud, bias, and denial of access to their court by now admitting they "declined" to consider her claims, but continuing to deny relief by finding an "adequate, alternative" remedy would be to submit them in a 2255 motion (Decl. No. 481-530).

174.    Before the direct appeal process was final, the Supreme Court decided **Santos** and **Cuellar**,

invalidating merger and concealment money laundering convictions (Decl. No. 537).

175.    At the behest of AUSA W. Ferguson, Judge Bell unlawfully takes jurisdiction during direct appeal to enter an order to provide the means to deny Marcusse relief under **Santos** in the 2255 process where, incredibly, Defendants concede her money laundering convictions were invalid, but use this collusive scheme with the court to maintain them (Decl. No. 504, 534-539). The money laundering convictions comprised 20 of Marcusse's 25-year sentence (Decl. No. 350, 355).

176.    Donald Davis, Jr., who was appointed by the Chief Judge (WDMI) as the U.S. Attorney at the time Marcusse's petition for writ of certiorari during direct appeal was denied by the Supreme Court, enabling him to be in control for the 3 years her 2255 case was pending. Davis was never appointed by the President nor confirmed by the Senate (Decl. No. 664).

177.    AUSA Davis, who never entered an appearance in Marcusse's criminal case, was nonetheless present during the grand jury process and trial as the admitted author of the response that falsely represented Agent Forrester did not exist, claiming Marcusse fabricated the Forrester SSBT endorsement letters to bar her access to the good-faith reliance defense he had cause to know would have mandated acquittals (Decl. No. 23, 31, 36-37, 45-49, 365, 646-647, 652-659, 663).

178.    Judge Bell <u>copied</u> the Government's Response to deny relief in the 2255, which was filed under Davis's name as U.S. Attorney, containing numerous materially false representations, while disregarding all objections in Marcusse's Reply (Decl. No. 58, 365, 630, 665).

179.    In the three-year 2255 process, the evidence shows all of Marcusse's issues were barred from consideration where Judge Bell refuses to file her brief, disregarding his promise to the Sixth Circuit to file it in order to have her mandamus petition dismissed, allowing him to omit 40 claims entirely and rewrite another 42 claims to enable their denial. Judge Bell holds the Sixth Circuit order in contempt to procedurally default yet another 19 claims preserved on direct appeal, and he

declines leave to file motions containing a new innocence claim under **Skilling**, the new FOIA admissions proving Agent Flink's testimony and evidence were knowingly false, and the Tax Court Decision establishing all of the $936,626 in unreported "income" claims were falsified upon which all the convictions had relied in the jury instructions (Decl. No. 6, 58, 104-106, 136-138, 166, 179, 238, 290-294, 369-383, 409-410, 452-453, 504, 524, 531-544, 568-630, 775-785).

180.    The record shows AUSA Gezon fraudulently schemed with Judge Bell to deny Marcusse the right to proceed pro se by effecting "hybrid" representation without her understanding or consent, under threats and coercion, which was intended from the start of the trial to provide Judge Bell with the means to afterwards refuse to consider all 37 claims of ineffective assistance of counsel in her 2255 case (Decl. No. 541).   This scheme enabled felonies to be committed by Defendants with no potential ramifications, no defense to be permitted to guarantee guilty verdicts, and no remedy to ever be available, showing the Defendants always knew the charges were fictitious.

181.    The evidence and record shows that Marcusse and a co-defendant were the only two individuals in the history of the United States to have been made "restricted" filers upon the submission of an initial 2255 motion (Decl. No. 480, 531-533, 581).

182.    The record shows that as obstructed and new evidence became available to void Marcusse's convictions and sentence under a civil process through a FRCvP Rule 60(d) motion to vacate against the initial 2255 case, access to the sentencing court has continued to be barred through the 3 judges taking over her case (Decl. No. 540-544, 569-575, 580-602, 693-696, 785).

183.    This evidence establishes Defendant DOJ attorneys unlawfully interfered with Marcusse's right of access to the courts, causing her to have been barred from having these claims heard on the merits for remedies to illegal convictions, an illegal 25-year sentence, and illegal garnishment for restitution for losses caused by uncharged third parties protected by the Defendants.

## COUNT XI

### DEFENDANTS SHIRKED DUTY TO INVESTIGATE, ADDRESS, OR LAWFULLY DISPOSE OF PLAINTIFF COMPLAINTS OF CONFLICTS OF INTEREST AND CRIMINAL ACTS COMMITTED IN THE ABSENCE OF JURISDICTION AND DISCRETION, CAUSING CONTINUING INJURY

184.    Defendants have disregarded the competent and reliable evidence Marcusse submitted in support of her claims and complaints, refused to investigate the criminal activities of their own employees, and in most cases, failed to even acknowledge receipt of her claims.

185.    As to the written authorization of the FBI Director Agent Forrester was required to obtain before using FBI letterhead to endorse or promote SSBT in its commercial banking affairs under 18 USC 709, and the necessary exemption under 18 USC 208(b)(1) or (b)(3) for financial conflicts of interest, Michael Siedel attested it was "not searchable" (Decl. No. 697-699)(See Exh. A, B).

186.    When this response is appealed, Christina Triana affirmed by claiming the request did not "reasonably describe the records sought" (Decl. No. 700-701)(See Exh. C, D).

187.    As to Agent Forrester's activities as an agent of a foreign principal or certification such employment was required in the national interest, exemption for Agent Forrester obtaining fees, and communications as to U.S. federal government involvement in the commercial affairs, promotion and protection of SSBT and its theft of depositor funds, pursuant to FARA, 18 USC 208(b)(1), (b)(3), 219(a),(b), 22 USS 611 and 616(a),(c)(d)(1), Douglas Hibbard refuses to conduct a search (Decl. No. 702-703)(See Exh. E, F).

188.    When this response is appealed, Christina Troiani affirms (Decl. No. 704-705)(Exh. G, H).

189.    Although a FARA Complaint against Gerard Forrester for failure to register was served on Ass't. A.G. Matthew Olsen, no response has been forthcoming (Decl. No. 706-707)(See Exh. I, J).

190.    To date, Defendant Offices of the Director of the FBI and Attorney General have neither adjudicated this complaint nor required Gerard Forrester to register as a foreign agent, unlawfully

withholding and unreasonably delaying nondiscretionary agency action.

191.    Although an administrative claim under 18 USC 208(d), and 5 CFR 2638.305, Complaint of

Bribery, Public Corruption & Collusion, Request for Advisory Opinion, Request for Corrective &

Remedial Action, was served on Defendant Director, U.S. Office of Government Ethics, no response

has been forthcoming (Decl. No. 708)(See Exh. K).

192.    Defendant responses have been irrelevant or nonresponsive to requests to show pros-

ecutors reported conflicts of interest or obtained a formal advisory opinion, as per 28 CFR

45.2, 28 USC 528 and 547, 5 CFR 2638.310 (Decl. No. 709-714)(See Exh. L, M, N, O, P).

193.    Defendant Federal Reserve engaged in bad faith by protecting illegal activities and con-

flicts of interest inherent to framing Marcusse, including destroying records, engaging in unlawful

post hoc rationalizations, and acting evasive as to whether official support existed for Leonard

Zawistowski's unlawful addition of publicly-traded stocks to prime bank fraud (Decl. No. 715-

730)(See Exh. Q, R, S, T, U, V).

194.    FOIA litigation for unlawfully obstructed documents was barred from adjudication by the

unreasonable denial of similar extensions of time as those granted to Defendants FBI and IRS, who

had timed their responses to interfere with deadlines in the then-pending 2255 case, or that the

court granted to other similarly-situated plaintiffs in unrelated cases (Decl. No. 731-742).

195.    A Complaint with the Office of Professional Responsibility (OPR), regarding the unprovoked

physical assaults and violence perpetrated against Marcusse both in and out of court, resulted in

Annie Wong responding that when there was no evidence a court had made a finding of miscon-

duct against an AUSA, it was their "policy" to refrain from investigating such issues, however, the

allegations against the U.S. Marshals would fall under the jurisdiction of the Office of Inspector

General (OIG), and she would be forwarding a copy to them (Decl. No. 743-744).

196.    The OIG attested they did not have the jurisdiction to investigate allegations a DOJ attorney had committed misconduct, advising they had referred the complaint to the Office of Professional Responsibility (OPR), except Marcusse never heard back from them (Decl. No. 745-746).

197.    A Complaint was submitted to Michael Horowitz, Director, Office of Inspector General, but the response stated it was more appropriate for OPR to review it (Decl. No. 747-748).

198.    A Complaint pursuant to 26 USC 7422(e), 7433 and 7434(a) was sent to Defendant IRS Area Director via certified mail (See Exh. W for excerpts), except delivery could not be established where the recipient engaged in a fraudulent scheme to obstruct delivery and sabotage her ability to file litigation (See Exh. X, Y)(Decl. No. 749-752).

199.    A Complaint sent to Defendant DOJ under 28 CFR 14.2(b) is denied (Decl. No. 753-754).

200.    A Petition to the Obama Administration Pardon Attorney is denied (Decl. No. 755-756).

201.    No response was received to a Petition to Void and Rescind Convictions and Sentence for Bribery and Public Corruption pursuant to 28 USC 218 to President Obama (Decl. No. 755, 757).

202.    No response was received from Attorney General Jeff Sessions to a Petition to Void and Rescind Convictions and Sentence under 18 USC 218, request for investigations and injunctions, to Void or Remit Forfeiture Order, and constitutional challenges to unenforceable statutes in which federal employees don't respond (Decl. No. 758-763)(See Exh. Z, A-1, B-1, C-1).

203.    No response was received to a Petition to Void and Rescind Convictions and Sentence for Bribery and Public Corruption under 28 USC 218 to President Trump (Decl. No. 764-765)(Exh. D-1).

204.    A second Petition to the Pardon Attorney was administratively closed when Marcusse was released from federal custody on 10/21/24 (Decl. No. 766-770).

205.    Over the years, Defendants have made the "facts" on which Marcusse's bogus convictions are based a moving target in response to each submission of previously-obstructed or new evi-

dence, causing Marcusse to be unable to determine what factual "offense" even supports her convictions, a constitutional right to which she is guaranteed (Decl. No. 775, 798).

206.    The court refused to file, reject, or return a Motion for Declaratory Judgment of the "facts" necessary to support the elements of 18 USC 1341 traceable as "proceeds" and a Petition for Writ of Mandamus over unlawful **Chevron** deference (Decl. No. 786-789).

207.    A **Chevron** claim has been preserved within the past 6 years (Decl. No. 775-798).

208.    Marcusse was warned _not_ to file the instant Complaint/Petition until after the transfer of jurisdiction out of the Western District of Michigan was complete over her criminal case in order to protect her from retaliation, which was not until 1/16/25 (Decl. No. 682, 772-773).

209.    Reasonable efforts to exhaust administrative remedies were made (Decl. No. 668-774, 785).

## CLAIMS FOR RELIEF

210.    Incorporate Paragraphs 1-209, accompanying Declaration Paragraphs 1-799, and all exhibits attached in support and cited from the public record.

211.    Pursuant to Federal Rule of Evidence 201(c)(2), Plaintiff is requesting this Court to take mandatory judicial notice of the facts establishing Defendants violated 18 USC 201, et al., and 28 USC 528, which prohibited the pursuit of Plaintiff's criminal case.

212.    The statutory bar under 18 USC 3625 for claims under the Administrative Procedures Act (APA) for convicted federal defendants is not applicable to Plaintiff where the facts and evidence establish her convictions and sentencing have always been VOID ab initio.

213.    The instant action cannot be barred by any findings that it is relitigation of claims already considered where the public record, facts, and competent evidence prove she has been barred from access to the courts by the obstructions, fraud, and criminal collusion committed by Defendants, to have the claims she raised considered and disposed of under what should have been

statutorily or constitutionally guaranteed remedies.

## COUNTS I - V

214.    The facts and evidence establish Defendants Attorney General, DOJ, FBI, IRS, Federal Reserve, and predecessors in office, made false representations, concealed and omitted material facts to fraudulently evade jurisdictional and sovereignty defects they had to cause know prohibited Plaintiff's prosecution, including a lack of standing under **Clearfield Trust** doctrine, unclean hands, 28 USC 528 (disqualification for conflicts of interest), pursuit of fictitious charges, and subrogating investor claims based on fraud in inducement. In absence of jurisdiction, there is no official act or discretion available. In absence of sovereignty, there is no private right of criminal prosecution, and no common law offense supports criminal jurisdiction under 18 USC 3231.

215.    The facts and evidence establish Defendant DOJ attorneys, FBI special agents, IRS revenue and special agents, Treasury employees, and Federal Reserve employees had imputed conflicts of interest arising from committing crimes to pursue Plaintiff's prosecution to conceal the criminal acts of FBI Supervisory Special Agent Gerard Forrester, Attorney General John Ashcroft, and Treasury attorney James Kramer-Wilt, in violation of 18 USC 201, et al., while engaging in deliberate indifference as accessories after the fact and misprision of felony, in violation of 18 USC 3, 4; First, Fourth, Fifth, Sixth and Eighth Amendments, and Separation of Powers. See also 28 USC 528 (disqualification for personal, financial or political conflicts of interest), 28 USC 530B (ethical standards), 28 USC 535(b) (expeditious reporting required), 28 USC 544 (oath of office), 28 USC 547 (exception clause), 5 CFR 2635.402, and 28 CFR 45.2.

216.    Defendant FBI Senior Supervisory Agent Gerard Forrester, who made promotional letters on FBI letterhead without authorization and advertised online to obtaining payments from SSBT, did not report his actual conflict of interest in regard to SSBT, under 18 USC 208(b), as required.

217.    Defendant Attorney General John Ashcroft did not report his actual conflict of interest, i.e., quid pro quo political favors to Robert Plaster, under 18 USC 208(b), as required, nor did he withdraw authorization for or recuse himself from Plaintiff's prosecution.  The evidence shows Defendant Attorney General Ashcroft had a history in office of similar favors granted to Plaster.

218.    Defendant Federal Reserve "expert" Leonard Zawistowski, who made admission his employer collapsed SSBT at Plaintiff's trial, except the admission was fraudulently removed from the transcripts, did not report this conflict of interest under 18 USC 208(b), as required.

219.    Defendant Treasury attorney James Kramer-Wilt, who vetted the Winfield Moon investment, pled guilty and was convicted under 18 USC 209(a) for unlawful payments from Richard Gerry, Moon's investment promoter, in violation of 18 USC 201, et al.

220.    Defendant Attorney General and predecessors had ministerial and nondiscretionary duty to supervise litigation of Defendant DOJ attorneys per 18 USC 519, making rules to assure compliance with 18 USC 530B, which under ABA Rule 3.3, includes ministerial and nondiscretionary duty to refrain from false statements, and report crimes under 18 USC 4.  AUSA's Gezon and Davis falsely denied FBI Agent Forrester's "existence" to obstruct his appearance for good-faith reliance defense mandating acquittals.  When proof of Forrester's existence is discovered, AUSA McManus and U.S. Attorney Patrick A Miles, Jr., violate ABA Rule 3.8(h), requiring they "seek to remedy" conviction of innocent defendant.  AUSA's McManus and Miles instead make new irreconcilable false representations to maintain unlawful convictions against Plaintiff and protect their predecessors from criminal exposure for unreported, imputed conflicts of interest and witness tampering, in violation of 18 USC 208(a) and 1512(b)(1), making them an accessory after the fact, in violation of 18 USC 3.

221.    The facts and evidence establish Defendant DOJ attorneys, FBI special and supervisory agents, IRS revenue and special agents, Treasury attorneys and employees, Federal Reserve em-

ployees, and predecessors, did not report their actual or imputed conflicts of interest under 18 USC

208(b) and 5 USC 13106(a)(2)(A)(ii), as required.  See also 5 CFR 2635.402, and 28 CFR 45.2.

222.    Plaintiff has been injured by imprisonment and now by garnishment due to the unconsti-

tutional and fraudulent obstructions of admitted bank record evidence at trial by Defendants DOJ,

IRS, and FBI to deny her the rights to establish third-party culpability, investments made, and

unforeseeability, in violation of 18 USC 3661 (no limitation shall be placed on information); con-

flicts of interest of Defendants DOJ, IRS, FBI and Treasury in having protected culpable third parties

against civil and criminal liability for investor losses, in violation of 18 USC 201, et al.; evidence

obstructed by Defendants DOJ and IRS of investments made, which otherwise would have man-

dated reduction of investor losses to zero for no restitution, as per USSG 2B1.1, Notes 3(c)(i) (loss

"shall be reduced" for "services rendered")(Decl. No. 120-121); refusal of biased judiciary to con-

sider list of fictitious investors and amounts for sentencing, direct appeal and 2255 processes.

223.    Defendants President, Attorney General, Director of FBI, Secretary of Treasury, Chair of

Board of Governors of Federal Reserve, Commissioner of IRS, and predecessors in office, had a

ministerial and nondiscretionary duty to enforce the bribery and conflict of interest provisions

under 18 USC 201, et al., including 208(a),(c),(d), and 218.

224.    Defendants President, Attorney General, Director of FBI, Secretary of Treasury, Chair of

Board of Governors of Federal Reserve, Commissioner of IRS, and predecessors in office, have un-

lawfully and unconstitutionally withheld and delayed action to which Plaintiff is entitled, failing to

act, pursuant to 18 USC 201, et al., 216(b),(c); 28 USC 528, 1361; 5 USC 555(b),(c), 702, 704, and

706(1).  The discretionary function exception does not exist where evidence establishes Defen-

dant conduct is criminal, violating agency guidelines.

## COUNT VI

225.    The facts and evidence establish Plaintiff's preserved violations of **Chevron** deference rendering her trial, sentencing, direct appeal and 2255 processes, which were barred from consideration while she was in the custody of the FBOP, should now be reviewable and reversible per **Corner Post, Inc. v. Board of Governors of Federal Reserve System**, 603 US _____ (2024).

## COUNT VII

226.    Defendants Attorney General, Department of Justice attorneys, and predecessors in office, had a ministerial and nondiscretionary duty to ensure compliance with 18 USC 3771(f)(1) for crime victim rights.  Instead, Defendants unconstitutionally and fraudulently manipulated the evidence and courts to deny Plaintiff the right to enforcement of the immunity agreement over the prime bank investment fraud Defendants agreed had been committed against her as a "victim", and she had the right to be heard on this claim, which would have caused the indictment(s) to be VOID.

227.    Defendants Attorney General, Department of Justice attorneys, and predecessors in office, had a ministerial and nondiscretionary duty to enforce immunity contract provisions with Plaintiff.

228.    Defendants Attorney General, Department of Justice attorneys, and predecessors in office, have unlawfully and unconstitutionally withheld and delayed action to which Plaintiff is entitled, committing fraud and failing to act, pursuant to 5 USC 555(b),(c), 702, 704, and 706(1); 28 USC 1361; First, Fourth, Fifth, Sixth and Eighth Amendments.

## COUNT VIII

229.    Defendants Attorney General, DOJ, FBI, IRS and Federal Reserve are presumed to know the law, including the denial of all due process at trial causes convictions to be VOID.  Defendants and their predecessors had a ministerial and nondiscretionary duty to respect Plaintiff's right to due process, except they actively engaged in unconstitutional and illegal acts to obstruct this right,

including by interference with judiciary to have Plaintiff barred from access to all remedies, in violation of First, Fourth, Fifth, Sixth and Eighth Amendments, Separation of Powers.

230.    Defendants Attorney General, DOJ, FBI, IRS, Federal Reserve, and their predecessors have unlawfully withheld and unreasonably delayed agency action to which Plaintiff is entitled, pursuant to 5 USC 702(1),(2)(A)-(F), 28 USC 1361.

## COUNT IX

231.    This is not a case of prosecutorial overreach subject to discretionary powers or authority, but the willful commission of fraud and felonies to falsely investigate, arrest, prosecute and im-prison Plaintiff on fictitious charges, and bar her from being heard.  It is a crime in violation of 18 USC 1519 and 26 USC 7204, 7214(a) to falsify or destroy documents in the obstruction of justice and fabrication of "income" claims.  By committing felonies to convict Plaintiff, the Defendants knew or had cause to know they were not acting in the usual course of business or employment, or within the scope of the official duties of such employee or agent therewith.

232.    The facts and evidence establish the losses and restitution were calculated in the absence of all due process where the bank record evidence was fraudulently obstructed by Defendants, as per 18 USC 3661 (no limitation shall be placed on information); 18 USC 3663(a)(1)(A)(in no case shall participant in offense (IRS/Treasury) be considered victim); refusal by biased trial judge to consider impact of $936,626 in fictitious motive on the jury, as established by secret collaboration to reduce transfers to investments from a co-defendant and U.S. Tax Court Decision in Plaintiff's favor; and obstruction of service of complaint to initiate litigation for fraudulent returns under Taxpayer Bill of Rights, as per 26 USC 7434, 7207, 7214;

233.    The facts and evidence establish Defendants Department of Justice, FBI, IRS, and Federal Reserve unconstitutionally violated all due process guaranteed to Plaintiff, in violation of the First,

Fourth, Fifth, Sixth and Eighth Amendments and Separation of Powers.

234.    By committing felonies to frame and convict Marcusse, the Defendants knew or had cause to know they were not acting in the usual course of business or employment, or within the scope of the official duties of such employee or agent therewith.   The discretionary function exception does not exist where the competent and reliable evidence establishes Defendant conduct is criminal, violating agency guidelines.

235.    The facts and evidence show Defendant DOJ exercised unlawful and unconstitutional control over the courts and their employees, officers (including court-appointed defense attorneys), and contractors (including court reporters) in Plaintiff's case, which is not power the Defendants had discretion to exercise.  Whereas it is per se reversible error to collude with a biased judge to fix a trial's outcome, Defendant DOJ had cause to know they could not prevail in a new trial with a different judge after Plaintiff became wise to their playbook of criminal schemes.

236.    Defendant Attorney General, and predecessors in office, had a ministerial and nondiscretionary duty to supervise the litigation of U.S. Attorneys and Assistant U.S. Attorneys under 28 USC 519 to ensure they do not engage in felonies while representing the United States.

237.    All Defendants had a ministerial and nondiscretionary duty to report violations of federal criminal law to Defendant Attorney General pursuant to 28 USC 535(b), except no evidence exists to show this ever occurred but instead willful obstructions and failure to comply are established.

## COUNT X

238.    The facts and evidence show the Sixth Circuit was biased against Plaintiff in fixing the outcome of the appeal, denying her the statutory right to an appeal by barring her claims from being heard.  These judges fraudulently "declined" consideration of all claims, as established by the previous filing of a false order to deny a rehearing by attesting they had, in fact, considered them,

thereby exposing their collaboration to conceal and thereby condone the criminal misconduct of Defendant DOJ attorneys.

239.    In causing the violation of all due process, including by continuous and material interference in the judicial machinery and denial of access to the courts, such as a motion to vacate the 2255 decision via a Fed. R. Civ. Proc. 60(d) independent action.  Defendant DOJ rendered Plaintiff's trial, sentencing, direct appeal and 2255 processes VOID, pursuant to the First, Fourth, Fifth and Sixth Amendments, in violation of the Separation of Powers, Fed. R. Crim. Proc. 32(j)(1)(A)(B), 18 USC 3742; 28 USC 1291, 2255.

240.    Defendant Attorney General and predecessors had ministerial and nondiscretionary duty to supervise litigation of Defendant DOJ attorneys per 18 USC 519, making rules to assure compliance for them to be subject to State laws and rules under 18 USC 530B, which includes mandates under ABA Rule 3.8(a), refrain from prosecuting charge not supported by probable cause or known to be fictitious, and 3.8(h), "shall seek to remedy" conviction of defendant convicted of offense he or she did not commit.

## COUNT XI

241.    Defendant FBI Director Jeff Sessions and successors in office had a ministerial and non-discretionary duty to ensure compliance with 18 USC 709, false advertising, which mandated the violator to be punished by a fine or imprisonment and enjoined (See Exh. Z).  Defendants FBI and DOJ evasively and unlawfully rejected the duty to even search its database for documents to show compliance, pursuant to 5 USC 552 and 552a (See Exh. A-C).

242.    Defendant Attorney General, and predecessors in office, had a ministerial and nondis-cretionary duty to ensure Gerard Forrester filed a "true and complete registration statement" under oath, pursuant to 22 USC 612(a).

243.    A Complaint was filed 8/21/23 with Defendant Attorney General via Matthew G. Olsen,

Ass't. Attorney General for National Security, for failure to register under FARA, false advertising

and misuse of FBI letterhead without the written authorization of the FBI Director, and various

criminal acts (See Exh. I), except no action was taken, thereby unlawfully withholding and unrea-

sonably delaying agency action to which Plaintiff is entitled, pursuant to 5 USC 706(1), (2)(A)-(F), to

vindicate her informational rights to establish a **Clearfield Trust** violation and the lack of sovereign-

ty and jurisdiction to pursue her criminally.

244.    Defendant Director of Office of Government Ethics (OGE) Walter M. Shaub, Jr., had min-

isterial and nondiscretionary duty to review Plaintiff's request for formal advisory opinion, provide

informational assistance, and consult with Criminal Division of DOJ, as per 5 USC 2638.305(a),(d).

245.    The Director of OGE shall refer to the Attorney General the name of individual where rea-

sonable cause exists to believe willful failure to file a report, pursuant to 5 USC 13106(b). Defen-

dant Director unreasonably delayed action and failed to act, pursuant to 5 USC 704, 706(1).

246.    Defendants IRS, DOJ, and Treasury fraudulently obstructed and disregarded Plaintiff's

complaint under 26 USC 7434, 7422 and 7433, which denied her the right to contest fabricated tax

returns submitted by IRS Agent Darline Goeman and unlawful collection efforts after she prevailed

in U.S. Tax Court over the fictitious "income" claims used to support all of her convictions, in

violation of First, Fifth, Sixth and Eighth Amendments.  Defendants IRS, DOJ and Treasury also

violated ex post facto prohibitions to presume the validity of the claims under 26 USC 6201(a)(4)

and 6213(a),(b)(5) (See Exh W, X, Y).

247.    Defendants IRS, Commissioner of IRS, DOJ, Attorney General, Treasury, and Secretary of

Treasury had a ministerial and nondiscretionary duty to ensure access to administrative remedies

and litigation under the statutory Taxpayer Bills of Rights, pursuant to 26 USC 7434, 7422 and 7433

(See also Exh. Z).

248.    Pursuant to 5 USC 555(b) and 706(1), Defendants IRS, Commissioner of IRS, DOJ, Attorney

General, Treasury, and Secretary of Treasury have unreasonably delayed action and failed to act.

### RELIEF REQUESTED

WHEREFORE,   Plaintiff Janet Mavis Marcusse respectfully requests that this Court:

A.    Enjoin garnishment by Defendants DOJ and Treasury over VOID sentencing judgment for

restitution to investor victims, pursuant to 5 USC 706(1),(2)(A)-(F); 18 USC 201, et al., 216(b),(c),

218; First, Fifth and Sixth Amendments; Fed. R. Civ. Proc. 65.

B.    Enjoin collection efforts for restitution to the IRS by Defendants DOJ, IRS, and Treasury over

VOID sentencing judgment, as per 5 USC 706(1),(2)(A)-(F); 18 USC 201, et al., 216(b)(c), 218; Tax-

payer Bill of Rights, 26 USC 7434, 7207, 7214; First, Fifth, Sixth Amendments; Fed. R. Civ. Proc. 65.

C.    Compel Defendants President, Attorney General, and successors in office, to take remedial

and corrective action by declaring Plaintiff's convictions and sentencing judgment unlawful, uncon-

stitutional, and VOID ab initio due to jurisdictional and sovereignty defects barring pursuit of fic-

titious charges, pursuant to 5 USC 702, 704, 706(1), (2)(A)-(F); 18 USC 201, et al. 218; 28 USC 1361;

violation of First, Fourth, Fifth, Sixth, Eighth Amendments, Separation of Powers.

D.    Compel Defendants Attorney General, President, Director of FBI, Secretary of Treasury,

Chair of Board of Governors of Federal Reserve, Commissioner of IRS, and successors in office, to

take remedial and corrective action by exercising the power under 18 USC 218 to declare Plaintiff's

convictions and sentencing judgment VOID ab initio, expunge all convictions, dismiss the super-

seding indictment, and return her DNA sample.  Pursuant to 18 USC 218, these Defendants possess

the power to declare VOID and rescind any contract, right, use, authority, benefit, ruling, decision,

or opinion granted or published.  Indeed, Defendants have cause to know such remedial and cor-

rective action is mandated pursuant to 18 USC 201 (Notes), et al., jurisdictional and sovereignty structural defects, and fraud. See 18 USC 208(a)-(b), 216(b)-(c); 5 USC 555(b)(c), 702, 704, 706(1), (2)(A)-(F); 5 CFR 2635.106(b), 2635.402; 28 CFR 45.2; 28 USC 1361; violation of First, Fourth, Fifth, Sixth and Eighth Amendments, Separation of Powers.

E.      Hold unlawful, unconstitutional, and set aside as VOID ab initio the jurisdictional and sovereignty defects that prohibited Defendants Attorney General, DOJ, FBI, IRS, Federal Reserve, Treasury, predecessors and successors in office, from pursuing and maintaining fictitious charges against Plaintiff, pursuant to 5 USC 702, 704, 706(1), (2)(A)-(F), **Gonzalez v. Thaler**, 132 S Ct 641, 648 (2012) (Jurisdictional defects can never be waived or forfeited and courts are obligated to consider an objection); **Clearfield Trust Co. v. United States**, 318 US 368, 369 (1943)(United States does business on business terms); in violation of First, Fourth, Fifth, Sixth, Eighth Amendments, Separation of Powers.

F.      Hold unlawful, unconstitutional, and set aside as VOID ab initio the bribery and conflict of interests (actual and imputed) of Defendants and predecessors in office, which were in violation of 18 USC 201, et al., 5 USC 13106(a)(2)(A)(ii); pursuant to 5 USC 702, 704, 706(1), (2)(A)-(F); in violation of First, Fourth, Fifth, Sixth and Eighth Amendments.

G.      Compel Defendants Attorney General, Department of Justice attorneys, FBI, Federal Reserve, IRS, and successors in office to reverse Plaintiff's convictions due to the unlawful, unconstitutional, arbitrary, deceitful, selective and unreasonable **Chevron** deference demanded of the judiciary by Defendants, pursuant to 5 USC 555(b),(c ), 702, 704, 706(1),(2)(A)-(F); 28 USC 1361; in violation of First, Fourth, Fifth, Sixth and Eighth Amendments, Separation of Powers.

H.      Hold unlawful and unconstitutional the arbitrary, deceitful, selective, and unreasonable manipulations of **Chevron** deference employed by Defendants to pursue fictitious criminal charges

against Plaintiff and deny her the rights to a presumption of innocence, an unbiased adjudicator, to be informed of the nature and cause of accusation, a fair trial, a jury determination of the facts, and due process, pursuant to 5 USC 706(2)(A)-(F); in violation of First, Fifth, Sixth Amendments.

I.      Compel Defendants Attorney General, Department of Justice, and successors in office, to take remedial and corrective action by exercising power to enforce immunity contract and declare Plaintiff's indictment(s) VOID ab initio, pursuant to 5 USC 706(1), (2)(A)-(F); 28 USC 1361; in violation of First, Fifth, Sixth and Eighth Amendments.

J.      Hold unconstitutional and unlawful the evidence tampering and perjury committed to circumvent victim provisions and enforcement of immunity contract for Plaintiff in which Defendants Department of Justice attorneys, IRS, and their predecessors engaged, in violation of 18 USC 1519, 1621, 1622; pursuant to 5 USC 706(2)(A)-(F); in violation of First, Fifth, Sixth Amendments.

K.      Compel Defendants Attorney General, Department of Justice, FBI Director, and successors in office, to take remedial and corrective action by exercising power to declare Plaintiff's convictions and sentencing judgment VOID for the willful denial of all due process, pursuant to 5 USC 706(1), (2)(A)-(F); 28 USC 1361; in violation of First, Fourth, Fifth, Sixth, Eighth Amendments, Separation of Powers.

L.      Hold unconstitutional and unlawful the denial of all due process to Plaintiff in which Defendants Attorney General, Department of Justice, FBI, IRS, Federal Reserve, and their predecessors engaged, pursuant to 5 USC 706(2)(A)-(F); 28 USC 1361; in violation of First, Fifth, Sixth, Eighth Amendments, Separation of Powers.

M.      Compel Defendant Attorney General, or successor in office, to take remedial and corrective action by reversing convictions unlawfully and unconstitutionally obtained by Defendant Department of Justice attorneys eavesdropping on conversations between Plaintiff and attorney David

Kaczor at trial to interfere in his representation and obtain the information to suborn perjury from their witnesses to cause guilty verdicts, pursuant to 18 USC 2520(b)(1), 5 USC 702, 704, 706(1),(2) (A)-(D); 28 USC 1361; in violation of Fifth, Sixth, Eighth Amendments, Separation of Powers.

N.     Compel Defendant Attorney General, and successor in office, to take remedial and corrective action by reversing convictions unlawfully and unconstitutionally obtained by Defendants DOJ, IRS, FBI, Treasury, and Federal Reserve engaging in organized crime, bribery (actual and imputed), witness tampering, threats, retaliation, money laundering, fraud, extortion, robbery, kidnapping, drugging Plaintiff's food and water prior to court appearances to interfere with her rights to present a defense, cross examine witnesses, and be competent to stand trial, in violation of Fifth and Sixth Amendments, pursuant to 21 USC 843(f)(1), 18 USC 201, et al., 1964(a)-(c), as per 18 USC 1961, and 5 USC 702, 704, 706(1), (2)(A)-(F); 28 USC 1361; in violation of First, Fourth, Fifth, Sixth, and Eighth Amendments, Separation of Powers.

O.     Hold unlawful and unconstitutional the criminal acts of Defendants Department of Justice, FBI, IRS and Federal Reserve attorneys, agents, and employees, in violation of Titles 18, 21 and 26, as enumerated herein and in the Declaration, including predecessors in office, pursuant to 5 USC 706(2)(A)-(F); in violation of First, Fourth, Fifth, Sixth, Eighth Amendments, Separation of Powers.

P.     Compel Defendants Attorney General, Department of Justice, and successors in office, to require Gerard Forrester to register as a foreign agent in compliance with the Foreign Agent Registration Act (FARA) under 5 USC 702, 704, 706(1), 28 USC 1361; in violation of First, Fifth, Sixth Eighth Amendments.

Q.     Hold unlawful Defendants Attorney General, FBI Director, FBI, Department of Justice, and predecessors in office, refusal to require Gerard Forrester's registration as a foreign agent under the Foreign Agent Registration Act (FARA), pursuant to 5 USC 702, 704, 706(1),(2)(A)-(F).

R.      Compel Defendant Director of Office of Government Ethics, and successors in office, to

provide Plaintiff with her informational rights pursuant to 5 USC 2638.305(a), 18 USC 216(b),(c), 5

USC 702, 704, 706(1), 28 USC 1361.

S.      Clarify the legal rights and obligations of the parties to this action.

T.      Toll Statute of Limitation provisions to accommodate statutory and common law remedies

that should have been available to Plaintiff, including those obstructed.

U.      Grant Plaintiff such additional relief as the Court deems just.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my

knowledge, information, and belief that this complaint: (1) is not being presented for an improper

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or

reversing existing law; (3) the factual contentions have evidentiary support, as presented in the

accompanying Declaration and Exhibits; and (4) the complaint otherwise complies with the

requirements of Rule 11.  I agree to provide the Clerk's Office with any changes to my address

where case-related papers may be served.  I understand that my failure to keep a current address

on file with the Clerk's Office may result in the dismissal of my case.

Date: 5/20/25

Janet Mavis Marcusse
P.O. Box 246
Kanawha, IA 50447

## CERTIFICATE OF SERVICE

### Package 2 of 2 (One Copy)

This is to certify that a copy of the following:

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
PETITION FOR WRIT OF MANDAMUS
EXHIBITS

DECLARATION OF JANET MAVIS MARCUSSE
EXHIBITS

MOTION TO SEAL RESIDENCE ADDRESS & TELEPHONE NUMBER
OF PLAINTIFF FOR COMPLAINT FOR INJUNCTIVE & DELARATORY RELIEF
PETITION FOR WRIT OF MANDAMUS

CIVIL COVER SHEET

are being served by mailing the same in a USPS Priority Mail postage-paid box via certified
mail addressed to:

Clerk of Court
United States District Court
333 Constitution Ave., NW
Washington, DC 20001

Date: 5/20/25

Janet Mavis Marcusse
P.O. Box 246
Kanawha, IA 50447

RECEIVED
Mailroom

MAY 2 7 2025

Angela D. Caesar, Clerk of Clerk
U.S. District Court, District of Columbia